IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE SIMMONS-BARBA<br>5375 Banbury Drive<br>Columbus, Ohio 43235<br><br>   Plaintiff,<br><br> vs.<br><br>THE OHIO STATE UNIVERSITY<br>c/o Office of Legal Affairs<br>1590 North High Street, Suite 500<br>Columbus, Ohio 43201-2178<br><br>   Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br>Case No.  2:11-CV-0095<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Plaintiff Denise Simmons (referred to herein as "Plaintiff" or "Ms. Simmons"), for her Complaint against Defendant The Ohio State University (referred to herein as "Defendant"), hereby states as follows:

## PARTIES

1. Plaintiff is a resident of Columbus in Franklin County, Ohio.  Plaintiff brings this action to redress injuries committed against her as a result of Defendant's actions.

2. Upon information and belief, Defendant is a public entity established and organized under the laws of Ohio, with the authority to sue and be sued in its own name.

## JURISDICTION AND VENUE

3. This action is brought pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Defendant's Medical Center is located in Franklin County, Ohio, at which all of the events in question took place.

5. Defendant is an "employer" as that term is defined in the FMLA. Defendant was Plaintiff's employer at all times material herein, and has employed more than fifty (50) people at all relevant times herein.

6. Plaintiff is an "employee" as that term is defined in the FMLA.

## FACTS

7. Plaintiff was employed by Defendant as a Registered Nurse at The Ohio State University Medical Center starting in 1995.

8. Plaintiff worked in the critical care float pool from 1997 until her termination on September 20, 2010.

9. At all relevant times herein, Plaintiff worked in excess of 1,250 hours for Defendant.

10. At all relevant times herein, Plaintiff had been employed by Defendant for more than a year.

11. At all relevant times herein, Plaintiff was an "eligible employee" as that term is defined by the FMLA.

12. On or around January of 2009, Ms. Alisa Vance became the manager of the critical care float pool and Plaintiff's direct supervisor.

13. Thus, by the time Ms. Vance became her supervisor, Plaintiff had already worked for Defendant for approximately fourteen (14) years.

14. Prior to Ms. Vance's arrival, Plaintiff was a model employee.

15. In the fourteen years before Ms. Vance's arrival, Plaintiff had never received a negative performance appraisal from Defendant.

16. In the fourteen years before Ms. Vance's arrival, Plaintiff had received only one written reprimand from Defendant.

17. On or about January 27, 2009, Plaintiff took leave pursuant to the FMLA for her own scheduled surgery.

18. Plaintiff returned from leave on February 9, 2009.

19. Plaintiff experienced multiple complications from the surgery and had to take FMLA leave again for a second surgery from April 14, 2009 through April 28, 2009.

20. Almost immediately after her return to work in or around May 2009, Plaintiff received her first negative performance evaluation and first written reprimand from Ms. Vance.

21. Plaintiff's May 2009 written warning resulted from her being tardy on a morning when she had to care for her young asthmatic son.

22. When the written warning was issued, Ms. Vance was aware of Plaintiff's son's medical condition.

23. Plaintiff's son suffered from severe asthma attacks, which usually occurred in the morning, and would frequently become ill from his medication.

24. Plaintiff applied for, and was approved for, FMLA leave to care for her son in or around August 2005.

25. Plaintiff reapplied for FMLA leave to care for her son every year.

26. Ms. Vance made Plaintiff's requests for FMLA leave to care for her son excessively onerous and burdensome.

27. Ms. Vance made Plaintiff reapply more often than legally necessary.

28. In May of 2009, Plaintiff met with Ms. Vance to discuss her negative performance evaluation.

29. During the meeting, Ms. Vance made several negative comments concerning Plaintiff's attendance and use of FMLA leave.

30. Ms. Vance also stated, however, she was aware that she could not punish Plaintiff specifically over her use of FMLA leave because to do so would be illegal.

31. After her meeting with Ms. Vance, Plaintiff contacted Employee Relations to resolve her tardiness issue.

32. Employee Relations contacted Ms. Vance about the issue and subsequently informed Plaintiff that she could utilize her FMLA leave for the days she was tardy to care for her son.

33. Plaintiff began utilizing FMLA leave for mornings she was tardy due to caring for her son in June 2009.

34. Ms. Vance had never suggested to Plaintiff that her intermittent FMLA could have been applied to her incidents of tardiness that were caused by her son's illness.

35. After Plaintiff complained to Employee Relations concerning her need for additional FMLA leave, Ms. Vance's attitude towards Plaintiff and her use of FMLA became increasingly more hostile.

36. Ms. Vance singled Plaintiff out because of her use of FMLA leave and discriminated and retaliated against her.

37. During her last year of employment, Plaintiff utilized FMLA leave four (4) to five (5) times a month to care for her son.

38. On September 4, 2009, Plaintiff took FMLA leave to care for her son.

39. On September 5, 2009, the very next day, Plaintiff received a second written warning from Ms, Vance for making an immaterial error on a patient's chart.

40. Plaintiff is aware that other nurses, who did not use FMLA leave and who made the same error on the same day, did not receive written reprimands.

41. Ms. Vance routinely treated Plaintiff less favorably than other employees and retaliated against Plaintiff in various ways, including but not limited to:

    a. commenting to Plaintiff that she uses too much FMLA leave and stating that Plaintiff does not need FMLA leave;

    b. requesting that Plaintiff change her work schedule since her son's asthma attacks occur only in the morning;

    c. disciplining Plaintiff more harshly than other employees who did not use FMLA leave;

    d. excessively scrutinizing Plaintiff's work and disciplining her for trivial errors;

    e. refusing Plaintiff's reasonable request to transfer to another department.

42. Plaintiff is aware of other employees under Ms. Vance's supervision who have been retaliated against for using FMLA leave.

43. On August 12, 2010, Plaintiff's attorney sent a letter to Defendant putting it on notice of the illegality of its actions toward Plaintiff.

44. On September 20, 2010, Plaintiff was issued another written warning for a documentation error.

45. Ms. Vance informed Plaintiff that the final decision had been made to terminate her.

5

46. Defendant gave Plaintiff ten (10) days to resign in lieu of termination.

47. To avoid the stigma of a termination and the difficulty such a stigma would create in her search for replacement employment, Plaintiff resigned on or about October 2, 2010.

48. Her last day of work was October 5, 2010 and her termination was back dated to September 20, 2010.

49. Although her separation from employment has been characterized as a resignation, for all intents and purposes, Defendant terminated or constructively terminated Plaintiff from her employment.

50. Since the time of her termination, Plaintiff has engaged in a diligent effort to secure employment comparable to the position she held with Defendant.

51. Plaintiff has been unable to secure such employment.

52. At all times material herein, Defendant acted willfully, maliciously and in conscious and/or reckless disregard for Plaintiff's rights, with great probability that its acts and omissions would cause substantial harm to Plaintiff.

53. As a direct and proximate result of Defendant's acts and omissions described herein, Plaintiff has suffered from substantial harm, including lost compensation, lost benefits, other economic losses and has suffered from serious emotional distress. Plaintiff expects to suffer emotional, economic and other damages into the future.

## COUNT I

### (Interference with FMLA Rights - 29 U.S.C. 2601, *et seq.*)

54. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

55. Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2).

56. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

57. Plaintiff's requests for, and use of, FMLA leave from 2005 thru 2010 were to care for her son's "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

58. Defendant unlawfully interfered with Plaintiff's FMLA rights by: (a) using FMLA-protected leave time as a negative factor in disciplining Plaintiff; (b) using FMLA-protected leave time as a negative factor in affording Plaintiff certain terms and conditions of employment;(c) terminating Plaintiff's employment; and (d) retaliating against Plaintiff due to Plaintiff's requests for, and use of, FMLA leave time.

59. Similarly-situated employees who did not use FMLA leave were treated more favorably than Plaintiff.

60. Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discriminatory treatment of Plaintiff.

61. Defendant's violation of the Family and Medical Leave Act entitles Plaintiff to all available remedies pursuant to 29 U.S.C. § 2617(a).

## COUNT II

**(Retaliation—Family and Medical Leave Act - 29 U.S.C. 2601, *et seq*)**

62. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

63. On or around August 12, 2010, Plaintiff's counsel sent Defendant a letter putting it on notice of its illegal activities in discriminating against Plaintiff based on her requests for, and use of, FMLA leave.

64. Defendants violated the FMLA by retaliating against Plaintiff by terminating her employment due to Plaintiff's requests for, and use of, FMLA-protected leave time, and her complaint to Defendants regarding its infringement of her FMLA rights.

65. Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

66. Defendant's violation of the Family and Medical Leave Act entitles Plaintiff to all available remedies pursuant to 29 U.S.C. § 2617(a).

WHEREFORE, Plaintiff respectfully requests that she be awarded monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, as well as reinstatement or front pay, whichever is appropriate, in an amount to be determined at trial, but in any event not less than $250,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/Gregory R. Mansell
Robert J. Beggs (0002966)
(*John.Beggs@BeggsCaudill.com*)
Trial Counsel for Plaintiff
Danny L. Caudill (0078859)
(*Danny.Caudill@BeggsCaudill.com*)
Gregory R. Mansell (0085197)
(*Greg.Mansell@BeggsCaudill.com*)
Co-Counsel for Plaintiff
BEGGS CAUDILL, LLC
1675 Old Henderson Road
Columbus, Ohio 43220-3644
(614) 360-2044
Fax (614) 448-4544

## JURY DEMAND

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

/s/Gregory R. Mansell
Gregory R. Mansell (0085197)